UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Timothy Corcoran,

Plaintiff,

vs. ORDER

National Railroad Passenger Corporation, a/k/a Amtrak, a corporation,

Defendant. Civ. No. 00-1894 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 11th day of June, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the parties' Motions in limine. For these purposes, the Plaintiff Timothy Corcoran ("Corcoran") has appeared by William Kvas, Esq., and the Defendant National Railroad Passenger Corporation, also known as Amtrak ("Amtrak"), has appeared by Max C. Ramsey, Esq.

Some of the issues raised by these Motions are familiar to the Court, and need no further factual development. As a result, we can rule on those issues on the basis of the parties' written submissions, while other issues will require a further factual de-

FILED JUN 11 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

velopment, in order that we can rule on the basis of a full Record. In the interests of an orderly disposition of these Motions, we issue these provisional rulings in order to appraise the parties of our intended resolution of the Motions, absent some other intervening considerations.

## II. Factual and Procedural History

This is a personal injury action, that has been brought by Corcoran against his former employer, Amtrak. Corcoran worked for Amtrak as a railroad engineer until May 16, 1999, when, he contends, he sustained back injuries due to a defective seat in the locomotive. Specifically, Corcoran complains that "he was required to ride on a defective hard riding locomotive No. 827 with a defective engineer's seat and worn suspension and wheels that needed to be trued, on defective tracks." As a result, Corcoran commenced this action, which is brought pursuant to the Federal Employers' Liability Act ("FELA"), Title 45 U.S.C. §51 et seq., and the Locomotive Inspection Act ("LIA"), Title 49 U.S.C. §20701. Count I of Corcoran's Complaint alleges that Amtrak was negligent in failing to provide him with a reasonably safe place to work, and with reasonably safe equipment, and Count II alleges that Amtrak violated the LIA by failing to provide a locomotive "in proper condition and safe to operate without unnecessary danger of personal injury."

Amtrak denies liability, and disputes the nature, and the extent of the Plaintiff's claimed injuries.

III. Discussion

Corcoran advances four Motions in limine, which seek to exclude the following: 1) any evidence of disciplinary action taken by Amtrak against Corcoran in 1994; 2) any evidence of Corcoran's family medical history; 3) any argument that Corcoran failed to mitigate his damages when he complied with physical restrictions imposed by his treating physician, as determined by a functional capacity examination; and 4) any argument that Amtrak is relieved of its nondelegable duty to provide Corcoran with a reasonably safe place to work, or that its liability is extinguished because Corcoran's injuries occurred while operating a train over tracks owned and maintained by Burlington Northern Santa Fe Railroad Company. As Amtrak has advised the Court that it does not intend to argue that it is relieved of its nondelegable duty to provide Corcoran with a reasonably safe place to work, or that its liability is extinguished because Corcoran's injuries occurred while operating a train over tracks owned and maintained by Burlington Northern Santa Fe Railroad Company, see, Defendant's Memorandum of Law in Opposition to Plaintiff's Motions in Limine, at 5, we will not address

that issue further, but rather, we deny the Plaintiff's Motion as to this issue as moot.[1]

In turn, Amtrak advances three Motions in limine: 1) barring any mention of the fact that the FELA is the Plaintiff's sole remedy, and/or that the Plaintiff is not entitled to collect Workers' Compensation benefits; 2) barring any mention or argument concerning Congress' intent in enacting the FELA; and 3) excluding evidence that the Defendant has paid medical expenses on behalf of the Plaintiff. As Corcoran has advised the Court that he does not intend to mention Congress' intent in enacting the FELA, or to submit evidence that Amtrak has paid his medical bills, see, Plaintiff's Response to Defendant's Motion in Limine, at 1, we will not address those issues further, but rather, we deny the Defendant's Motions regarding these issues as moot.

As a consequence, we proceed with Corcoran's remaining Motions, which seek to exclude evidence regarding his disciplinary history, his family medical history, and his failure to mitigate his damages, as well as Amtrak's remaining Motion, which seeks to

---

[1]Amtrak makes an extensive argument about the admissibility of evidence regarding video tape surveillance of Corcoran which was conducted at the request of Amtrak. See, Defendant's Memorandum of Law in Opposition to Plaintiff's Motions in Limine, at 1-3. To our knowledge, Corcoran has not advanced a Motion in Limine seeking to exclude such evidence. Absent some other consideration, if he wishes to do so, we will address that issue at the time of Trial.

exclude the fact that the FELA is Corcoran's sole remedy, and/or that he is not entitled to collect workers' compensation.

A. Standard of Review. With certain exceptions, all relevant evidence is admissible at Trial. See, Rule 402, Federal Rules of Evidence. Evidence is "relevant," if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Federal Rules of Evidence. Nonetheless, "relevant" evidence may be excluded if it is found to be unfairly prejudicial. See, Rule 403, Federal Rules of Evidence.

Under Rule 403, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Accordingly, Rule 403 requires the Court to balance the probative value, and the need for the evidence, against the harm that is likely to result from its admission. Within this context, unfair prejudice "'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Fireman's Fund Ins. Co. v. Thien, 63 F.3d 754, 758 (8th Cir. 1995), quoting United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir. 1980); see also, Old Chief v. United States, 519 U.S. 172, 180 (1997)("The term 'unfair prejudice,' as

to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); Block v. R.H. Macy & Co., Inc., 712 F.2d 1241, 1244 (8th Cir. 1983). As a general rule, however, the balance, under Rule 403, should be struck in favor of admission. See, United States v. Johnson, 934 F.2d 936, 942-43 (8th Cir. 1991)("Although relevant evidence is inherently prejudicial * * * the balance under Rule 403 generally should be struck in favor of admission."); Kehm v. Proctor & Gamble Manufacturing Co., 724 F.2d 613, 627 (8th Cir. 1983)(stating that it is "the general policy of the Federal Rules [of Evidence] to favor the admission of relevant evidence, absent an extremely strong showing that admission will lead to unfair prejudice"); Block v. R.H. Macy & Co., Inc., supra at 1244.

B. Legal Analysis. Given these oft-repeated precepts, we address each of the parties' Motions in turn.

1. The Plaintiff's Motions in Limine.

a. Motion to Exclude Evidence of 1994 Disciplinary Action.

Corcoran first seeks to exclude evidence regarding the fact that he was disciplined, in 1994, for a track authority violation. He argues that this violation, which occurred eight years ago, is not relevant to the present action because

there is no issue regarding whether a particular character trait, or conduct on his part, contributed to his injury. See, Rule 405 (b), Federal Rules of Evidence.[2] He also points out that character evidence is not generally admissible under Rule 404, Federal Rules of Evidence. In turn, Amtrak argues that, since it appears that Corcoran is contemplating introducing evidence of his good work performance, as his exhibit list includes letters of commendation from 1992 and 1993, then it should be able to introduce evidence of his later discipline.

As neither party submitted specific evidence regarding either the 1994 discipline, or the 1992 and 1993 commendations, we cannot conclude, on the basis of the Record presented, whether evidence of Corcoran's work record -- good or bad -- is relevant to the issues presented in this case. It would appear not, however, since there is no contention, as far as the Court is aware, that Corcoran's work performance contributed to his injury. Accordingly, we provisionally grant this Motion, as well as Amtrak's informal Motion

---

[2]Rule 405(b) provides:

> In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

to exclude evidence regarding the commendations Corcoran received in 1992 and 1993.

b. Motion to Exclude Evidence of Corcoran's Family's Medical History.

In this Motion, Corcoran seeks to exclude evidence that he is genetically predisposed to back problems, since his father and his brother apparently have back problems. He argues that such evidence is irrelevant since "Amtrak takes Plaintiff as it finds him and is liable for all damages caused, in whole or in part, by its negligence or its violation of the LIA." Memorandum in Support of Plaintiff's Motions in Limine, at 3 ("Plaintiff's Memorandum in Support"), citing Lancaster v. Norfolk & Western Rwy. Co., 773 F.2d 807, 822 (7th Cir. 1985). If such evidence is relevant, Corcoran contends that it should, nonetheless, be excluded, as its probative weight is outweighed by the prejudice -- including undue delay, and confusion of the issues -- such evidence would cause him. In turn, Amtrak asserts that the only reason the issue of Corcoran's family history with back problems arose in this case is because Corcoran's treating physician made the following remark in his treating notes: "[Corcoran] has a strong family history for discogenic degeneration with a brother and a father who had surgery for this." Ex. G, Affidavit of Max C. Ramsey in Opposition to Plaintiff's Motions in Limine ("Ramsey Affidavit").

Since the treating physician is scheduled to give expert testimony on behalf of Corcoran, Amtrak argues that the evidence is relevant to its inquiry of the treating physician.

On the basis of the Record presented, it appears that the evidence of Corcoran's family history of back problems, as least as far as it is related by his treating physician and testifying expert, is relevant to the issues presented in this action. The fact that Corcoran has a family history of back problems, and his treating physician felt that such a history was important enough to record in his treating notes, is an area which Amtrak should be able to explore when questioning Corcoran's treating physician, since such evidence may show an alternative cause for Corcoran's injury. While we are mindful of Corcoran's reference to Lancaster v. Norfolk & Western Rwy. Co., supra at 822, the case merely relates the widely accepted proposition that, generally, "the tortfeasor takes his victim as he finds him, if the victim is highly vulnerable that is the tortfeasor's bad luck," along with the correlating proposition, accepted by some Courts, that "damages of the 'eggshell skull' victim must be reduced to reflect the likelihood that he would have been injured anyway, from a nonliable cause, even if the defendant had not injured him." See also, Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1294 (8th Cir. 1997) ("[T]he universal doctrine of tort law [is] that a tortfeasor must

take the plaintiff as it finds [him.]")(Minnesota Human Rights Act case); Sauer v. Burlington Northern R.R. Co., 106 F.3d 1490, 1495 (10th Cir. 1997)("It is true that a defendant cannot escape liability because a preexisting condition made plaintiff more susceptible to injury.")(FELA case); Stevens v. Bangor and Aroostook R.R., Co., 97 F.3d 594, 602 n.8 (1st Cir. 1996)("Indeed, FELA and other federal statutes incorporate the "eggshell skull" rule to prevent defendant from avoiding liability in certain cases."); Jordan v. Atchison, Topeka and Santa Fe Rwy., Co., 934 F.2d 225, 229 (9th Cir. 1991) ("It is a well-settled principle of tort law that when a defendant's negligence causes an injury to plaintiff, the defendant is liable for the resulting damage to the plaintiff, even though the plaintiff had a preexisting condition that made him more susceptible to injury or made the consequences to him more severe.")(FELA case). Moreover, we cannot conclude that the probative value of such evidence is outweighed by the prejudice of introducing such evidence.

We note, though, that we render no opinion on whether Amtrak could introduce such evidence to argue that any damages for Corcoran's injuries must be reduced to reflect the fact that he would have eventually suffered from the same type of injury due to his family history of back problems, since such an argument would necessarily rely upon the evidence supporting such an assertion,

and we have no notice or recitation of that evidence. With that caveat, we provisionally deny the Plaintiff's Motion.

c. Motion to Exclude Argument Regarding Corcoran's Failure to Mitigate Damages.

Corcoran's final Motion relates to one aspect of his mitigation of damages.[3] According to Corcoran, his treating physician imposed restrictions upon him after a Functional Capacity Examination, which he argues he followed. Therefore, he contends that it would be foolhardy for Amtrak to be allowed to argue that he should have disregarded his physician's instruction. In turn, Amtrak would like to submit evidence that one of Corcoran's treating physicians felt, in October of 1999, that an option for the Plaintiff was to return to work, tolerating the discomfort, with no restrictions. See, Ex. H to Ramsey Affidavit.

Corcoran's argument against the admission of this evidence is not specifically based upon the relevance of the evidence but, rather, that "it is nonsensical to argue that Plaintiff should have challenged his doctor's orders by disregarding the restrictions placed on him." Plaintiff's Memorandum in Support, at 4. Of

[3]After the time period for submitting Motions in limine had closed, Corcoran submitted a further Motion seeking to exclude evidence regarding his failure to mitigate damages. At this time, we await Amtrak's response on the Motion, and will issue our ruling on that late Motion subsequently.

course, as the Record shows, there is at least some evidence that a doctor who treated Corcoran thought that he could return to work if he could tolerate the discomfort. See, Ex. H to Ramsey Affidavit. Thus, the real issue here is a weighing of relevant evidence, which is in the province of the Jury, since the Plaintiff's medical records, which relate to his asserted injury, are certainly relevant. Therefore, based on the sparse evidence we have before use, we provisionally deny the Plaintiff's Motion in limine, concerning his failure to mitigate his damages by not returning to work.

2. The Defendant's Motion in limine. Amtrak contends that Corcoran should not be able to submit evidence to the Jury concerning the fact that a railroad worker's only remedy is a recovery under the FELA, and that, therefore, he cannot, and did not, receive workers' compensation benefits. In support of this contention, Amtrak cites Stillman v. Norfolk & Western Ry. Co., 811 F.2d 834 (4th Cir. 1987), Winell v. McKessport Connecting R.R. Co., 411 F.2d 510 (3rd Cir. 1969), and Kodack v. Long Island R.R. Co., 342 F.2d 244 (2nd Cir. 1965).

In Stillman, the plaintiff, who was a railroad worker, brought an action against his employer under the FELA. Stillman v. Norfolk & W. Ry. Co., supra at 836. He argued that he should be permitted to inform the Jury that his only recourse for his injuries was

under the FELA, and that he would receive no Workers' Compensation benefits. His reasoning for such a disclosure was that, "because the jury may have assumed he would receive workers' compensation, it may have been reluctant to grant him recovery under FELA." Id. at 838. The Court rejected this notion, however, and found that the fact that the plaintiff could not receive Workers' Compensation was "completely irrelevant to the issues presented in this case." Id. The Court also noted that allowing the plaintiff to present such evidence of his inability to receive Workers' Compensation benefits would be contrary to the rule that defendants in FELA cases are not allowed to advise the Jury that the plaintiff has received benefits from collateral sources. Id., citing Eichel v. New York Central R.R. Co., 375 U.S. 253, 255-56 (1963), and Schroeder v. Pennsylvania R.R. Co., 397 F.2d 452, 457 (7th Cir. 1968); see also, Starling v. Union Pacific R.R. Co., 203 F.R.D. 468, 486 (D. Kan. 2001); Sullivan v. Northeast Illinois Regional Commuter R.R. Corp., 1999 WL 1045206 at *1 (N.D. Ill. November 12, 1999)(excluding evidence that plaintiff who brought suit under the FELA could not receive Workers' Compensation benefits).

In contrast, Corcoran points to a California State Court decision in which the Court allowed the plaintiff to reveal to the Jury, during the voir dire process, that the FELA was the Plaintiff's only remedy, and that he could not receive Workers' Compen-

sation benefits. See, Bohme v. Southern Pacific Co., 87 Cal. Rptr. 286 (Cal.App. 1970). The Court specifically determined that cases such as Eichel v. New York Central R.R. Co., supra, which stand for the proposition that defendants in FELA cases may not mention any benefits that a plaintiff is receiving from collateral sources, had no bearing on the issue of whether the plaintiff can reveal that the FELA is his only remedy. Id. at 289. The Court further reasoned:

> It is reasonable to assume * * * that men and women who sit on our juries are aware of the Workmen's Compensation Act, and are aware generally that it affords protection to employees who suffer personal injury arising out of, and which is connected with their employment, and that claims for damages for such injury, as against the employer, are heard before the Industrial Accident Commission, and not in a court of law of general jurisdiction.

Id. at 290.

Thus, due to the presumption that the public commonly understands the availability of Workers' Compensation benefits, and because the Jury was given a "comprehensive and detailed instruction[] bearing upon the rights, duties and obligations of both plaintiff and defendant under the Federal Employers' Liability Act," the Court determined that the defendant suffered no prejudice from the plaintiff's revelation that he could only recover under the FELA. Id. at 291. We have found no other decision which supports the rea-

soning in Bohme, and the Plaintiff has not drawn any additional authority to our attention.

We agree with the Court's reasoning in Stillman. Any allusion to the fact that the Plaintiff, here, can only recover under the FELA, and has not received Workers' Compensation benefits, is "completely irrelevant" to the issues of liability and damages. Frankly, we do not understand why such an instruction would be appropriate in a FELA context, when in the ordinary tort claim, the fact that the plaintiff has, or could recover Workers Compensation, is not relevant unless a Workers' Compensation carrier has paid benefits and seeks to enforce a lien -- a circumstance plainly not presented here. Moreover, even if we mistakenly assumed that such evidence were somehow relevant, we are convinced that any such relevance is outweighed by the prejudice it could cause were the Jury to regard the Plaintiff sympathetically because of his sole recourse under the FELA. See, Rule 403, Federal Rules of Evidence. Therefore, we grant the Defendant's Motion in limine.

NOW THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motions in limine [Docket No. 18] are granted, denied, or reserved for disposition at the time of Trial, as detailed in the text of this Order.

2. That the Defendant's Motions in limine [Docket No. 27] are granted, or denied, as moot, as detailed in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE