UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Timothy Corcoran,

Plaintiff,

vs. ORDER

National Railroad Passenger Corporation, a/k/a Amtrak, a corporation,

Defendant. Civ. No. 00-1894 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of February, 2003.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the Defendant's Renewed Motion for Judgment as a Matter of Law, or for a New Trial. For these purposes, the Plaintiff Timothy Corcoran ("Corcoran") has appeared by William Kvas, Esq., and the Defendant National Railroad Passenger Corporation, also known as Amtrak ("Amtrak"), has appeared by Max C. Ramsey, Esq.

For reasons which follow, we deny the Defendant's Motion for Judgment as a Matter of Law, but grant, in part, its Motion for a New Trial.

FEB 24 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

II. Factual and Procedural Background

This is a personal injury action that was brought by Corcoran against his employer, Amtrak. Corcoran worked for Amtrak as a railroad engineer until May 16, 1999, when he sustained back injuries due to an allegedly defective seat in the locomotive that he was operating. Specifically, Corcoran complains that "he was required to ride on a defective hard riding locomotive No. 827 with a defective engineer's seat and worn suspension and wheels that needed to be trued, on defective tracks." As a result, Corcoran commenced this action, which was brought pursuant to the Federal Employers' Liability Act ("FELA"), Title 45 U.S.C. §51 et seq., and the Locomotive Inspection Act ("LIA"), Title 49 U.S.C. §20701.

Count I of Corcoran's Complaint alleges that Amtrak was negligent in failing to provide him with a reasonably safe place to work, and with reasonably safe equipment, and Count II alleges that Amtrak violated the LIA by failing to provide a locomotive "in proper condition and safe to operate without unnecessary danger of personal injury." Amtrak has denied liability, and has disputed the nature, and the extent, of Corcoran's claimed injuries.

A Jury Trial was conducted from June 17 through June 21, 2002. At the close of the presentation of Corcoran's evidence, both Corcoran and Amtrak moved, under Rule 50(a), Federal Rules of Civil Procedure, for Judgment as a Matter of Law. We denied both

Motions, and the case proceeded with the presentation of Amtrak's evidence. Thereafter, both of the parties rested, and then renewed their Motions for Judgment as a Matter of Law. Once again, we denied the Motions, and the case was submitted to the Jury. Ultimately, the Jury concluded that both Corcoran, and Amtrak, were negligent, and that the negligence of each caused the Plaintiff's injury. See, Corcoran v. National R.R. Passenger Corp., Civ. No. 00-1894, Order for Judgment, at 1-2 (D. Minn., June 24, 2002)[Docket No. 62].

Specifically, the Jury apportioned Corcoran twenty percent, and Amtrak eighty percent, at fault. Id. at 2. In addition, the Jury found that, within the meaning of the LIA, "the seat in question" was not "in proper condition and safe to operate without unnecessary peril to life or limb," and that the violation of the LIA caused, in whole or in part, Corcoran's injury. Id. at 3. The Jury did not apportion any percentage of Corcoran's claimed injury to a preexisting condition, and it awarded a total of $1,055,759.00 in damages. Id. Amtrak now challenges the Jury's Verdict.

III. Discussion

In seeking Judgment as a Matter of Law, or a new Trial, Amtrak asserts that the Jury's Verdict, which awarded damages to Corcoran, must be set aside, and Judgment entered in its favor, because Corcoran failed to prove a violation of either the FELA, or the LIA.

Alternatively, Amtrak reasserts its previous objection,[1] that Corcoran's expert evidence, on his allegedly diminished future earnings capacity, was inadmissible and, as a result, it asks for Judgment as a Matter of Law on that issue or, at a minimum, a new Trial in which that evidence would be excluded from the Jury's consideration. In addition, Amtrak argues that the Jury's Verdict was excessive, and therefore, either a new Trial is warranted on the issue of damages, or a Remittitur should issue.[2] As would be expected, Corcoran opposes these Motions.

A. Standard of Review. Amtrak has moved, under Rule 50(b), Federal Rules of Civil Procedure,[3] for Judgment as a Matter of Law

---

[1]On the first day of Trial, Amtrak filed a Motion in limine, which sought to exclude the expert opinions of Paul Ringsmuth, and Dr. Karl Egge, as those opinions related to Corcoran's claimed loss of future earning capacity. We denied that Motion.

[2]A Remittitur is "[t]he procedural process by which an excessive verdict of the jury is reduced." Black's Law Dictionary, at 1295 (6th Ed. 1990).

[3]Rule 50(b) provides, in relevant part, as follows:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment -- and may alternatively request a new trial or join a

(continued...)

as to both Corcoran's FELA and LIA claims, and as to the issue of Corcoran's diminished future earnings capacity. Our review of this issue is controlled by Rule 50(a)(1), Federal Rules of Civil Procedure, which provides as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

A Motion for Judgment as a Matter of Law presents a legal question as to "whether there is sufficient evidence to support a jury verdict.'" Gray v. Bicknell, 86 F.3d 1472, 1478 (8th Cir. 1996), quoting Fox v. T-H Cont'l L.P., 78 F.3d 409, 413 (8th Cir. 1996), citing, in turn, White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992).

When considering a Motion for Judgment as a Matter of Law, we must "view the facts in the light most favorable to the nonmoving party." Mattis v. Carlon Elec. Prods., 295 F.3d 856, 860 (8th Cir. 2002). Moreover, "[t]he non-moving party is entitled to the benefit of all reasonable inferences, and a reasonable inference is one that may be drawn from the evidence without resort to speculation."

[3](...continued)
motion for a new trial under Rule 59.

Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 487 (8th Cir. 2002). We do not, however, "engage in a weighing or evaluation of the evidence, and we do not consider questions of credibility." United Fire and Cas. Co. v. Historical Pres. Trust, 265 F.3d 722, 726 (8th Cir. 2001). Although we "review the record as a whole," we "must disregard all evidence favorable to the moving party that the jury is not required to believe." Phillips v. Collings, 256 F.3d 843, 847 (8th Cir. 2001). Stated differently, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id.

Consequently, in reviewing Amtrak's Motion for Judgment as a Matter of Law, we are to analyze the Motion as follows:

> 1) consider the evidence in the light most favorable to the non-moving party, 2) assume that all conflicts were resolved in favor of the non-moving party, 3) assume as proved all facts that the non-moving party's evidence tended to prove, 4) give the non-moving party the benefit of all favorable inferences that may reasonably be drawn from the proved facts, and 5) deny the motion unless all the evidence points one way and is susceptible of no reasonable inferences sustaining the non-moving party's position.

Rockwood Bank v. Gaia, 170 F.3d 833, 841 (8th Cir. 1999). "This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference." Asa-

Brandt, Inc. v. Farmers Coop. Soc'y, 2002 WL 1714197 at *2 (N.D. Iowa, May 10, 2002).

With specific reference to an FELA claim, we have previously observed:

> Our analysis begins with a recognition that, for at least the last forty years, the Supreme Court "has emphasized the jury's role in determining whether an employer has breached its duties under the FELA." Ackley v. Chicago & Northwestern Transp. Co., 820 F.2d 263, 267 (8th Cir. 1987), citing Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506-07 (1956). Indeed, in Borough v. Duluth, Missabe & Iron Range Ry. Co., 762 F.2d 66, 68 n. 1 (8th Cir. 1985), and subsequently in Van Boening v. Chicago and North Western, 882 F.2d 1380, 1381 (8th Cir. 1989), the Court recognized that a directed verdict should be reserved for the "exceptional" case where there can be but one reasonable conclusion as to the Verdict.
>
> This is so because a "jury is required to weigh myriad factors including the nature of the task and its hazards, to determine whether an employer has furnished its employee with a reasonably safe place to work." Ackley v. Chicago & Northwestern Transp. Co., supra at 267, citing Biley v. Central V. R.R., 319 U.S. 350, 353-54 (1943). Accordingly, within this Circuit, and within the context of the FELA, "the right of the jury to pass upon a question of fault and causality must be most liberally viewed," and "the jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." Lockard v. Missouri Pacific Railroad Co., 894 F.2d 299, 303 (8th Cir. 1990),

> cert. denied, 498 U.S. 847 (1990), citing Ybarra v. Burlington Northern, 689 F.2d 147, 149 (8th Cir. 1982).

Hane v. National R.R. Passenger Corp., Civ. No. 5-95-20, Order (D. Minn. May 20, 1996), aff'd 110 F.3d 573 (8th Cir. 1997).[4]

In the final analysis, a grant of such a Motion is "only appropriate when no reasonable jury could have found for the nonmoving party." Mattis v. Carlson Elec. Prods., supra at 860; see also, Neely v. American Family Mut. Ins. Co., 123 F.3d 1127, 1129 (8th Cir. 1997)("'A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'"), quoting Ehrhardt v. Penn Mut. Life Ins. Co., 21 F.3d 266, 269 (8th Cir. 1994)(citations and quotations omitted).

In the alternative, Amtrak has moved for a new Trial pursuant to Rule 59(a), which provides, in pertinent part, as follows:

> A new trial may be granted * * * on all or part of the issues * * * in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore be granted in actions at law in the courts of the United States * * *.

In analyzing a Motion under Rule 59, "[t]he key question is whether a new trial should [be] granted to avoid a miscarriage of justice." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). "Such a

---

[4]Ordinarily, we would not cite one of our prior, unpublished decisions but, in this instance, the law firms involved in Hane are the same as involved here.

miscarriage of justice occurs when there is insufficient evidence to support the verdict," Larson v. Farmers Coop. Elevator of Buffalo Center, 211 F.3d 1089, 1095 (8th Cir. 2000), when the Verdict was against the weight of the evidence, see, Mathieu v. Gopher News Co., 273 F.3d 769, 784 (8th Cir. 2001); when the Verdict is excessive, see, Children's Broad. Corp. v. The Walt Disney Co., 245 F.3d 1008, 1017 (8th Cir. 2001); or when "for other reasons, the trial was not fair to the party moving." Id. As related to the last category, "[w]hen evidence is erroneously admitted or excluded or where the trial court has erred in the instructions to the jury," a new Trial may be appropriate to correct any "manifest injustice." Id.

In contrast to a Motion for Judgment as a Matter of Law, however, "'[i]n determining whether a verdict is against weight of evidence, the trial court can rely on its own reading of evidence -- it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'" Shaffer v. Wilkes, 65 F.3d 115, 117 (8th Cir. 1995), quoting White v. Pence, supra at 780; see also, Van Steenburgh v. The Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999) ("On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the

role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable.").

Nonetheless, the District Court may not reweigh evidence and "'set aside the jury verdict merely because the jury could have drawn different inferences or conclusions'" or because the Court believes that a different result would have been more reasonable. White v. Pence, supra at 780, quoting Fireman's Fund Ins. Co. v. Aalco Wreaking Co., Inc., 466 F.2d 179, 186 (8th Cir. 1972); see also, Mathieu v. Gopher News Co., supra at 784 ("[T]he fact that reasonable minds could disagree on the proper verdict does not show that the verdict the jury actually reached is against the great weight of the evidence; indeed quite the contrary."). Moreover, "'[w]here the subject matter of the litigation is simple; where there exists no complicated evidence or where the legal principles presented are such that they would not confuse the jury, the court should be reluctant to grant a new trial.'" White v. Pence, supra at 780, quoting Fireman's Fund Ins. Co. v. Aalco Wreaking Co., Inc., supra at 187.

B. Legal Analysis. Amtrak has moved for Judgment as a Matter of Law, or for a new Trial, on the entirety of Corcoran's claims, asserting that: (1) the Jury's finding, under the LIA, that the engineer's seat was not safe to operate without unnecessary peril to life or limb, and that the seat's condition was a cause of

Corcoran's injury, is unsupported by the evidence; (2) the Jury's finding, under the FELA, of negligence on the part of Amtrak, and apportionment of negligence between Corcoran and Amtrak, is unsupported by the evidence; (3) the conduct and statements of Corcoran's attorney, during his closing argument, were so inflammatory and prejudicial to Amtrak that it was impossible for the Jury to fairly consider the case; and (4) the Jury's finding, that no percentage of Corcoran's claimed injury was attributable to a pre-existing injury, is unsupported by the evidence.

More narrowly, Amtrak also contends that it is entitled to Judgment as a Matter of Law on the issue of Corcoran's damages for diminished earning capacity, and for lost wages after June of 2002, as it contends that: (1) there was no competent foundational medical evidence that Corcoran could not return to work for Amtrak; (2) there was no competent evidence that Corcoran's potential earning capacity in the field of Water Environmental Technology was diminished in any fashion; and (3) there was no competent foundational evidence that Corcoran's future earning capacity was in any way diminished. Finally, Amtrak also argues that the amount of damages awarded is inequitable, unconscionable, and insupportable as a matter of law, and is so unreasonably disproportionate to Corcoran's claimed injury and loss, as to shock the conscience, thereby

necessitating Judgment as a Matter of Law, a new Trial, or a Remittitur. We address each of the arguments in turn.

1. The Jury's Finding that Amtrak Violated the LIA.

Amtrak first contends that Corcoran did not prove a violation of the LIA, and that, as a consequence, it is entitled to Judgment as a Matter of Law, on that claim. Under the LIA, "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances * * * are in proper condition and safe to operate without unnecessary danger of personal injury." Title 49 U.S.C. §20701. "Negligence is not the basis for liability under the Act," but rather, "it 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate * * * without unnecessary peril to life or limb.'" Lilly v. Grand Trunk W. R.R. Co., 317 U.S. 481, 486 (1943).

Thus, "'the partial defense of contributory negligence and the bar of assumption of risk are not available' to the railroad." Topping v. CSX Transp., Inc., 1 F.3d 260, 261 (4th Cir. 1993), quoting Lilly v. Grand Trunk W. R.R. Co., supra at 491. A violation of the LIA must, in whole or in part, still be the proximate cause of a plaintiff's injury, however. See, Louisville & N.R. Co. v.

Botts, 173 F.2d 164, 167 (8th Cir. 1949). As a consequence, there is room for a Jury to conclude that, regardless of a defendant's violation of the LIA, the plaintiff's negligence was the "sole cause" of the plaintiff's injury. See, Topping v. CSX Transp., Inc., supra at 262.

In this case, the Jury found that the engineer's seat at issue was not in proper condition, and safe to operate without unnecessary peril to life and limb. Amtrak argues that Corcoran did not present evidence that the engineer's seat was unsafe to operate, within the meaning of the LIA, and that, even if he did, his own negligence was the "sole cause" of the injury. Clearly, the first argument is without merit. While Amtrak is correct that none of the engine crew who used the locomotive at issue, prior to Corcoran's route, perceived any problems with the seat, both Corcoran, and Corcoran's co-engineer on the day of the incident, Robert Kolkman ("Kolkman"), provided evidence that the lumbar adjustment of the seat was not working. Further, Amtrak's own investigation, as well as an inspection conducted by the Burlington Northern and Santa Fe Railroad, determined that the seat was indeed not functioning, or "defective."[5] Thus, there was certainly sufficient

[5]Amtrak further argues that Corcoran has not provided expert evidence that a broken lumbar adjustment is an "unnecessary danger of personal injury," but we conclude that it is within the realm of (continued...)

evidence for the Jury to find that the seat in question was an "unnecessary danger of personal injury." Title 49 U.S.C. §20701.

Amtrak next argues that the Jury could not have found that it violated the LIA, as Corcoran's own actions, and not the broken seat, were the "sole cause" of his injury. While it is clear, as the Jury concluded, that Corcoran's negligence was at least partially to blame for the accident, we cannot conclude that his actions were the "sole cause" of his injury. As Amtrak points out, both Corcoran and Kolkman did recognize, prior to the actual

---

(...continued)
the Jury to decide, without the provision of expert testimony, that a broken lumbar adjustment on a seat is an "unnecessary danger of personal injury." See, e.g., Topping v. CSX Transp., Inc., 1 F.3d 260, 261 (4th Cir. 1993)("It seems to us a classic jury question whether the presence of the loose metal object rendered the locomotive cab 'unsafe to operate.'"). Additionally, there was some tangentially related testimony from Dr. Emil Jay Van Cura on this issue. In pertinent part, Dr. Van Cura testified as follows:

> Q: [C]ertainly from a person with training and experience in preventing workplace injuries, one thing you are going to tell the railroad is if you inspect the seats and you've got a seat back that won't hold its position, that's something that going to present a risk of injury to the engineers; is that not the case.
>
> A: In general, yes.

Deposition of Dr. Emil Jay Van Cura, at 55 [Docket No. 58].

Thus, we conclude that the Jury had enough evidence to decide whether a broken lumbar adjustment was an "unnecessary danger of personal injury" within the meaning of the LIA.

occurrence of the incident at issue, that the lumbar adjustment on the seat was not functioning properly. Nonetheless, Corcoran did not follow Amtrak rules requiring him to "[i]nspect before using, and then use only the authorized tool, chair, seat, cable, chain, rope or any other item that is free of defect." Amtrak Safety Rule 5002, quoted at Memorandum in Support of Defendant's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial, at 5 n.2 ("Defendant's Memorandum").

Further, the evidence was clear that Corcoran could have switched out the locomotive containing the broken seat with another engine, but that he failed to do so, even though it was clear that he knew about this option, as he had done it before. Corcoran was apparently concerned about repercussions from causing delay, and he also testified that he discussed the option with Kolkman, who told him not to. As a result, Corcoran consciously decided to use the seat even though it was defective.

Nevertheless, Corcoran's obvious negligence was not the "sole cause" of his injury. Rather, the Jury heard evidence that, prior to May 16, 1999, Amtrak had knowledge of complaints about the seats used on this particular series of locomotive engine. In the year prior to the incident, Amtrak's safety committee had found that fifty percent of the seats on this series of locomotives were bad. Further, the area of track over which Corcoran was driving was

apparently known as an area of rough track. As such, the Jury was certainly free to conclude that Amtrak knew about the problems with the seats on this particular type of locomotive, but that it failed to take corrective action, and that the type of injury, which was suffered by Corcoran, was foreseeable to Amtrak, given the type of route he was required to travel. Therefore, the evidence supports the Jury's conclusion that Amtrak violated the LIA, and that such a violation was a cause of Corcoran's injury. See, e.g., McCarthy v. Pennsylvania R.R. Co., 156 F.2d 877, 881 (7th Cir. 1946)("The decedent's [negligent] acts were all concurring acts with the act of the defendant in violation of the statute, and were either acts of contributory negligence or assumption of the risk of known danger, from both of which, as we have pointed out, the decedent had been relieved by statute."). Resultantly, we conclude that the Jury's determination, as to Corcoran's LIA claim, is supported by sufficient evidence, and does not evidence "a miscarriage of justice." As such, we deny Amtrak's Motion for Judgment as a Matter of Law, or for a new Trial, on the liability portion of the Plaintiff's LIA claim.

2. The Jury's Finding that Amtrak Violated the FELA.

Amtrak next argues that the Jury's finding, under the FELA, of negligence on the part of Amtrak, and its apportion-

ment of negligence between Corcoran and Amtrak, is unsupported by the evidence. The FELA provides, in pertinent part, that "[e]very common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *." Title 45 U.S.C. §51. The statute specifically provides, however, that assumption of risk is not a defense for a railroad. Title 45 U.S.C. §54 ("In any action brought against any common carrier * * * to recover damages for injuries to * * * any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury * * * resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.").

"[P]roof of an accident alone is not proof of negligence," however. Hane v. National R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997). Rather, an FELA plaintiff must still show that the railroad was negligent as a predicate to liability, see, id., and "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." Gallick v. The Baltimore and Ohio R.R. Co., 372 U.S. 108, 117 (1963). Here, Corcoran can establish "reasonable foreseeability" through actual or constructive notice. See, e.g.,

Williams v. National R.R. Passenger Corp., 161 F.3d 1059, 1062-63 (7th Cir. 1998)(concluding that, under FELA, an employer must have actual or constructive notice before liability will attach); Sinclair v. Long Island R.R., 985 F.2d 74, 77 (2nd Cir. 1993)("Significantly, the essential element of reasonable foreseeability in FELA actions, * * * requires proof of actual or constructive notice to the employer of the defective condition that caused the injury."); Peyton v. St. Louis Southwestern Ry. Co., 962 F.2d 832, 834 (8th Cir. 1992)("Thus, an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury."); Brown v. Cedar Rapids & Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981)("In a FELA action, the employee must show by direct or circumstantial evidence that (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care.").

Amtrak first argues that the Jury's decision, that Amtrak had violated the FELA, is not supported by the evidence, as there was no evidence that Amtrak had notice, either actual or constructive, of the defective seat. Of course, as we have already noted, the

evidence did show that Corcoran and Kolkman were the first individuals to detect the defect on this particular seat, and that they did not notify anybody prior to using the seat, but there was also evidence that Amtrak had previously had problems with the seats in this series of locomotive. Specifically, Amtrak had received complaints about the seats on this series of engine locomotives, and Amtrak's safety committee, in the year prior to the incident, had determined that fifty percent of the seats, on this series of engines, were in bad condition. Thus, the Jury could have certainly concluded that Amtrak had constructive knowledge of the condition, but that it failed to take the necessary corrective action. As such, the Jury's Verdict on the issue of Amtrak's liability, under the FELA, must stand.[6]

Amtrak also complains about the Jury's apportionment of negligence between Corcoran and Amtrak. The Jury concluded that Amtrak was eighty percent negligent, and that Corcoran was twenty percent negligent. Amtrak's sole argument against this apportionment is that, given the fact that it had no notice of the defect, and because, in its view, Corcoran's negligence was the sole cause of his injury, the apportionment was unsupported by the evidence. We have

[6]Amtrak again raises the issue of "sole cause" but, given our previous discussion of that issue, in the context of Corcoran's claim under the LIA, the argument fails.

already addressed these arguments, however, and have found them to be unconvincing. Moreover, the apportionment of negligence, between Corcoran and Amtrak, is uniquely within the providence of the Jury, as part of its duty to weigh the evidence and, since we conclude that the Jury's decision did not represent a "miscarriage of justice," we may not upset that decision. Accordingly, we deny Amtrak's Motion for Judgment as a Matter of Law, or for a new Trial, in regard to the Jury's determination of liability under the FELA.

3. The Conduct and Statements of Corcoran's Attorney during His Closing Argument.

Next, Amtrak argues that the statements and conduct of Corcoran's attorney, when he stated during his closing argument, that Corcoran was following the direction of a senior engineer -- Kolkman -- when he failed to switch out the locomotive, which contained the defective seat, with another locomotive, thereby implying that Corcoran's failure to follow Amtrak's safety rule should be absolved because he was following such a directive, was so inflammatory and prejudicial to Amtrak that, despite the fact that Amtrak received a curative instruction on the issue, it was impossible for the Jury to fairly consider the case. The law is clear that improper statements, and conduct by counsel during closing argument, can constitute reversible error when those statements are